Ottenstein v. Alpaugh.

---

JOHN K. OTTENSTEIN, PLAINTIFF IN ERROR, V. JAMES E. ALPAUGH AND OTHERS, DEFENDANTS IN ERROR.

1. **County Clerk:** FOR WHAT ACTS ALONE SURETIES ON HIS OFFICIAL BOND ARE LIABLE. Action against sureties on the official bond of county clerk. The petition alleged that one Alpaugh, who was county clerk, had falsely certified, under the county seal, that a bill in his own favor for five hundred and sixty-four dollars against the county of Lincoln had "*been allowed by the county commissioners,*" by which means he was enabled afterwards to sell his pretended claim to the plaintiff, to his injury. *Held,* that inasmuch as there was no law requiring, or even authorizing, such certificate in any case, the making it could in no sense be regarded as relating to official duty, and that the sureties were not liable.

2.———: ———. Sureties on official bonds are answerable only for such acts of their principals as are done *virtute officii.*

ERROR to Lincoln county district court. Heard there upon demurrer to the petition before GASLIN, J., demurrer sustained, and action dismissed as to defendants, who were sureties on the bond upon which the action was brought.

*Hinman & Neville,* for plaintiff in error.

If the certificate of indebtedness, authenticated with the seal, is entirely illegal, yet the clerk is bound by law to *keep the seal of the county,* and not use nor permit its use upon any paper or in any manner not

directed by law, and such use forfeits his bond and gives the party injured a right to recover. Gen. Stat., 239, sec. 38. The instrument, or certificate of indebtedness, set forth in the proceedings, is a statement of what purports to have been the action of the board of county commissioners. When it says "said court" it refers to the commissioner's court, and the seal and signature of said clerk is attached to said certificate, as an attestation of the genuineness of the same, when the same was absolutely false, no such action having been taken by said board of county commissioners, and the said bondsmen are liable to the party injured by said clerk's fraudulent acts, representations, and attestations done by color of his said office. See Gen. Stat. above cited, also *Cricket et al. v. The State of Ohio*, 18 Ohio State, p. 9, and particularly p. 23, seems to be conclusive of this point, the only distinction being that in that case the money was obtained from the treasury and in this case from an individual. *Kane v. U. P. R. R. Co.*, 5 Neb., 105. 17 Gratt., Va., 124. 17 Mich., 480. 4 Ohio State, 418. 4 N. Y., 173. 13 Miss., 437.

*Lamb, Billingsley & Lambertson*, for defendants in error.

1. A party suing at law on a bond, or other written instrument, if he recover at all, recovers according to its terms. *Sexson v. Kelley*, 3 Neb., 104.

2. A county clerk is a ministerial officer, and a ministerial officer can do no valid act, but what he is either expressly or by necessary implication authorized to do. *Vose v. Dean*, 7 Mass., 280. *People v. Collins*, 7 Johns., 549.

3. There is no statutory provision that either expressly or by implication authorizes a county clerk to

sign or countersign certificates of indebtedness of a county.

4. A man who holds the office of clerk may do many things which will render himself personally liable, but for which his sureties are not responsible. The sureties do not bind themselves to protect the public against every act of their principal, nor do they become his sureties that he will commit no torts.

It is a principle, long and well established, that official acts are those which are done by virtue of the office; such as, if properly done, exculpate both the officer and his sureties from responsibility, but which, if neglected or improperly done, render both liable. Brandt on Suretyship and Guaranty, § 451, 453. *State v. Conover*, 28 N. J. L., 230.

5. A distinction is taken by the authorities between an act done *colore officii* and one done *virtute officii*, and in the latter only are the sureties of the officer held liable. *Morris v. Van Voast*, 19 Wend., 283. *Gerber v. Ackley*, 37 Wis., 44. *Coupy v. Henley*, 2 Esp., 240. *Seeley v. Birdsall*, 15 Johns., 267. *Huffman v. Kopplekom*, 8 Neb., 348.

In this case plaintiff, in his amended petition, claims that the act complained of was done by color of his (the clerk's) office, and not that he did it by virtue of his office, and for that reason fails to show a breach of the conditions of Alpaugh's official bond for which the sureties would be liable. *Gerber v. Ackley*, 37 Wis., 44.

LAKE, J.

The condition of the official bond on which the several defendants, who demurred to the petition, were sureties, was that their co-defendant, Alpaugh, should " render a true account of his office," etc., and "faith-

fully and impartially, and without fear, favor, fraud, or oppression, perform all other duties now or hereafter required of his office by law."

This bond is the measure of the obligation which these sureties took upon themselves. It was for the faithful performance by said Alpaugh of all the various and official acts and duties, which he as county clerk might legally be called upon to perform, that they undertook to answer.

And this leads us to the inquiry whether the act complained of, and by which Alpaugh succeeded in defrauding the plaintiff out of several hundred dollars, is covered by his official bond; in other words, whether it was in the line of his official duty.

The gravamen of this complaint is, that as county clerk, and under the county seal which was under his care, Alpaugh falsely certified that a " bill " in his favor for $564 had " been allowed by the county commissioners," by which he was enabled afterwards to sell his pretended claim against the county to the plaintiff, to his injury.

Although this deception and fraud was practiced by Alpaugh under color of his said office, it may be, it can in no sense be regarded as an official act. It was not done *virtute officii*. There was no law requiring or even authorizing such certificate to be made, not even if a just bill against the county had been allowed him by the board of county commissioners, and it was not even *prima facie* evidence of the fact therein asserted. All proceedings of the board of commissioners are recorded in a book kept for that purpose, and it is to this record that resort should be had to ascertain what action they have taken on any matter brought before them.

We believe the law is now well settled that sureties on official bonds are only answerable for such acts of

their principals as relate to official duty, or, as expressed in legal phrase, acts done *virtute officii*. Under this rule, which was recognized and applied in the case of *Huffman v. Kopplekom et al.*, 8 Neb., 344, it is clear that the demurrer to the petition was properly sustained.

JUDGMENT AFFIRMED.