Robinson, J.
 

 Two questions are presented here:
 

 (1) Is a bond such as here under consideration one upon which the obligor may be compelled to respond in an action by the person injured by the malfeasance of a police officer, upon the faithfulness of whose conduct the bond is conditioned, or does the bond run only to the benefit of the obligee named therein, the city of Dayton?
 

 (2) Is an action upon such bond barred by the provisions of Section 11225, General Code, after one year from the date the cause of action accrued?
 

 We are not advised, either by the pleadings or by the evidence, of the existence of a provision in the charter of the city of Dayton, or of the enactment of an ordinance by the city, requiring its police officers to execute or furnish an official bond. Neither this court nor the courts below could take judicial notice of the existence of such a provision. We are advised by the evidence in this case that it was the practice of the city of Dayton to have its police officers file an application for an indemnity bond, and that it was the practice of the city of Dayton to cover all such officials by an omnibus bond, for which it paid; that such bonds had for a period of years been furnished by the
 
 *582
 
 plaintiff in error, and that the contract therefor had been awarded by a public letting, after advertisement, and that the plaintiff in error was the best bidder; that the signatures of its police officers were not required or obtained to such bond, and that by agreement between the city and the plaintiff in error such officers. were covered by such bond, and the amount of coverage for each was indicated only by a schedule attached to the bond; that the schedule contained the name of Officer Roach, and liability for unfaithful performance by him of his duty as a police officer was indicated to the extent of $600.
 

 While there was no issue of want of consideration made by the pleadings, the record discloses that the city of Dayton paid to the plaintiff in error the sum of $3 on account of the name of Officer Roach appearing in the schedule and the coverage of $600. Whether the plaintiff in error exacted and received an annual payment of that sum on account of Officer Roach, or whether that sum constituted payment for the period of his employment, the record does not disclose. While the plaintiff in error in its bond refers to the policemen as officials, and to their positions as officers, and the trial was had apparently upon the theory that the bond was authorized either by the charter or by an ordinance of the city "of Dayton, we cannot assume that to be a fact which the record does not disclose, but are compelled to treat the bond as though issued without authority of any provision of the charter or act of the legislative body of the city, which necessarily adds to this case a complication which,
 
 *583
 
 by a reasonable degree of painstaking in the trial of the case, might well have been obviated.
 

 In the case of
 
 Ahsmuhs
 
 v.
 
 Bowyer,
 
 39 Okl., 376, 135 P., 413, 50 L. R. A., (N. S.), 1060, the Supreme Court of Oklahoma held:
 

 “A bond, voluntarily given by a district court clerk prior- to the passage of the Act of March 19, 1910 [Laws 1919, c. 69], naming the state of Oklahoma as obligee, conditioned for the faithful performance of his official acts, and for the accounting and paying over of all moneys by him received as such officer, is a valid and binding obligation, though not required to be given by statute, where supported by a valid consideration.”
 

 Upon the authority of that case and the authorities therein and in the footnotes thereto cited, we hold that the bond of the plaintiff in error to the city of Dayton, in the absence of proof that it was required by the charter or an ordinance of the city, is a common-law bond for a consideration, and enforceable against the plaintiff in error; and, while it is not, in the absence of such proof, strictly speaking, an official bond, it having been executed for such purpose, it comes within the meaning and contemplation of the provisions of Section 11242, General Code, and inures to the benefit of any person who has been injured by its breach. For, if this bond be not for the benefit of such person, it necessarily is for the benefit of no one, since the city of Dayton could not be held liable for any act of its policemen done in the discharge of official duty.
 

 We will not assume either that the plaintiff in error exacted and received a valuable consideration
 
 *584
 
 from the city of Dayton without itself intending to incur some liability, or that the city of Dayton purchased this contract of the plaintiff in error and parted with a valuable consideration therefor without a purpose of receiving some benefit therefrom. We therefore conclude that it not only was the intention of the parties to the contract that the benefit of this contract should inure to any person injured by its breach, but that, being a bond of indemnity for the faithful performance of official duty by an officer, it is an official bond within the meaning and contemplation of Section 11242, general Code, the provisions of which section were ingrafted therein by operation of law.
 

 Since by the form of the contract it is apparent that there never was any intention upon the part of the plaintiff in error to have Officer Roach or' any other officer covered by such contract join in the execution thereof, the contractual obligation of the plaintiff in error on the bond, was sole and not collateral. It is further apparent that by its contract, executed for a valuable consideration, plain-; ,tiff in error agreed with the city' to be severally bound in the sum of $600; that the fact that the bond was conditioned upon the faithful performance of official duty by Officer Roach did not créate any new or additional, obligation on' him; that he owed to the plaintiff in error the same duty he owed to the general .public, ánd no more, and owed that duty, not because of thé bond, but as an officer1, because of his office; that, while the plaintiff in error might have entered into a joint obligation ¡with Officer Roach to the. city, and might have required him to assume the obligation of principal
 
 *585
 
 therein, and might have limited its liability to That pf surety, in which event the liability of Officer Eoach under' the bond would have continued for nine years after his liability for a violation of his duty imposed by law had been barred by the statute of limitations, yet, had it done so, the extension of the period of the liability of Officer ¿Eoach from one year to ten years would in no way have changed the period of liability of the plaintiff in error, and that, while it might have enabled plaintiff in error to recoup from Officer Eoach, it was a subject with reference to which plaintiff in error had a right to contract, and, not having done go, it cannot now, to the prejudice of the defendant in error, avail itself of its own failure to so protect itself. This obligation, therefore, does not come within the rule of those cases which declare that there can be no obligation of a surety in the absence of an obligation of the principal upon which to base or found the obligation of the surety.
 

 Having reached this conclusion, it becomes unnecessary to distinguish this case from the case of
 
 State, for Use of Com’rs. of Knox County,
 
 v.
 
 Blake,
 
 2 Ohio St., 147, upon that question, and equally unnecessary to distinguish that case and the cases of
 
 State, for Use of Immel’s Adm’r.,
 
 v.
 
 Newman’s Ex’r., 2
 
 Ohio St., 567, and
 
 State for Use of Mount Pleasant Bank,
 
 v.
 
 Conway,
 
 18 Ohio, 234, from the cases of
 
 King, Carey & Howe
 
 v.
 
 Nichols,
 
 16 Ohio St., 80, and
 
 State, for Use of Com’rs. of Crawford County,
 
 v.
 
 Orr,
 
 16 Ohio St., 522. However, in the case of
 
 King
 
 v.
 
 Nichols, supra,
 
 this court has itself distinguished those cases; and because Sections 11225 and 11226, General Code, have the same
 
 *586
 
 distinguishing language from the act of 1831 (29 Ohio Laws, 214, 215), upon which
 
 State
 
 v.
 
 Conway, State
 
 v.
 
 Blake,
 
 and
 
 State
 
 v.
 
 Newman,
 
 all
 
 supra,
 
 were based, that the Code of 1853 (51 Ohio Laws, 59) had, upon which
 
 King
 
 v.
 
 Nichols
 
 and
 
 State
 
 v.
 
 Orr,
 
 both
 
 supra,
 
 were based, we are content with the distinction therein made by this court.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment
 
 affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade, Jones and Matthias, JJ., concur.